# Richmond

WOODROW F. PAYNE, ET AL. v. VIOLA J. PAYNE, ET ALS.

April 13, 1942.

Record No. 2503.

Present, All the Justices.

The opinion states the case.

*John D. White* and *J. Tinsley Coleman, Jr.*, for the appellants.

*J. M. Perry*, for the appellees.

SPRATLEY, J., delivered the opinion of the court.

John J. Payne died intestate in May, 1939, the owner of a farm of 160 acres in Augusta county, Virginia, and certain personal property consisting of livestock, farming implements and farming equipment. The farm was assessed for taxation at $5,200. It was subject to a Federal Land Bank mortgage in the sum of $8,207, made by a predecessor in title and assumed by the intestate, and also subject to a deed of trust securing a Federal Land Bank loan in the sum of $1,200.

John J. Payne left surviving him his widow, Viola J. Payne, and eleven children. Seven of the children were adults and the other four were infant girls, aged respectively, 19, 17, 14, and 11 years. The infant children lived with their mother on the farm. The adult children were married and had all left their parents' home except one son who helped his mother with the farm.

Mrs. Payne qualified as administratrix of the estate. She found it impossible to operate the farm profitably and provide for the liens against it. With two of her sons she offered to sell the land to J. V. Howell, of Amherst county, who knew the land well; but was unable to interest him as a purchaser. She then placed the farm in the hands of real estate agents for sale. These agents tried unavailingly to sell it to one of her adult sons. Finally, however, they interested Arthur E. Houff, Tazewell O. Tench, and Abner F. Weaver, the appellees, as purchasers.

A contract was entered into January 30, 1941, executed by the widow, three of the infant children, and all of the adult heirs-at-law and their respective consorts, except the appellant, Woodrow F. Payne and his wife, under which Houff, Tench and Weaver agreed, upon the delivery of a good and sufficient deed for the entire land, to pay therefor the sum of $12,000. The purchase price covered their assumption of the payment of the mortgage and deed of trust above mentioned, totaling $9,407, and the payment in cash of the residue of $2,593.

The contract contained the following provision:

"It is agreed that in order to pass good title to the said

farm, by reason of the fact that four of the Sellers are minors, the adult Sellers will institute and conduct, forthwith, in the Circuit Court of Augusta County, a chancery suit against the minors, in order that the sale hereby made may be confirmed by the Court, and a good title transferred to the Buyers."

On February 19, 1941, the widow and the six adult heirs-at-law and their consorts, who had executed the contract, instituted their suit against Woodrow F. Payne and his wife and against the four infant heirs.

The bill alleged the facts of ownership above mentioned; that the farm was not susceptible of partition in kind; that no one or more of the owners would accept an allotment of the farm and pay the others their respective shares; and that a sale and division of the proceeds thereof among the co-owners would promote the best interest of all parties concerned. It averred that the administratrix had in hand sufficient funds or personal property to pay all unsecured indebtedness on the estate. It set out the conditional sale and filed the contract as an exhibit. It prayed the court to decree that the farm was not susceptible of partition in kind; that a sale was necessary for partition of the proceeds; and that the contract with Houff, Tench and Weaver be approved by the court and the sale, upon its terms and conditions, be confirmed as a judicial sale.

Each of the infants answered by her guardian ad litem. The guardian ad litem in proper person also answered for each of the infants. The three infants, above fourteen years of age, answered under their oaths. All asked that the farm be sold.

Woodrow F. Payne, the appellant, owning an undivided one-eleventh interest, subject to the widow's dower, answered, admitting the truth of all of the allegations of the bill with a single exception. He denied that the consideration for the purchase of the property was adequate or satisfactory and alleged that a more advantageous offer had been received. He filed as an exhibit with his answer a paper writing by J. V. Howell, dated February 25, 1941, addressed "To

Whomsoever it may concern:," offering to purchase the farm at $12,500, the offeror to assume the mortgage and deed of trust indebtedness as a part of that sum and pay the residue in cash upon ratification of sale and delivery of a good and sufficient deed.

Houff, Tench and Weaver, by leave of court, filed their petition in the cause and were admitted as parties. The petition set forth the agreement of purchase, and prayed that the farm be sold to them in accordance with its terms.

A portion of the evidence was taken by depositions, and the remainder was heard by the court *ore tenus*. Five witnesses testified that they were farmers, owning farms near the Payne farm; that they were acquainted with that farm; that it could not be partitioned in kind; that $12,000 was a fair and adequate price for it; and that it was to the best interest of all the parties, including the widow and the infant children, that the farm be sold for that price. As opposed to this, the appellant offered only the testimony of Howell, who, when asked what, in his opinion, was a fair price, replied "I made the offer of $12,500."

The trial court, noting in its decree that Woodrow F. Payne objected to the sale "on the sole ground that the price agreed on was not an adequate or satisfactory sum," held that a sale of the farm was necessary in order to effect a partition; that such sale would promote the best interest of the owners; and that $12,000 was a fair and adequate price. The trial court, therefore, ratified, approved, and confirmed the conditional contract with Houff, Tench and Weaver and made the contract binding as a judicial sale "on all of the co-owners of the said farm and their consorts, parties to this suit." It then appointed a special commissioner to collect the purchase money and execute and deliver a deed to the purchasers who were to unite in the deed and thereby evidence their assumption of the Federal Land Bank liens against the land. The cause was then referred to a master commissioner to take and ascertain accounts, not necessary to be here stated.

Although appellants' only contention before the trial court was an inadequacy of price, they list seven assignments of

error in their petition for appeal. These assignments resolve themselves into two contentions, one, that these proceedings constituted a suit for the sale of infants' lands in which the statutory requirements were not complied with; and, second, that the sale confirmed by the court was not a judicial sale, and thus appellants cannot be compelled to join in a sale at a price not satisfactory to them and less than that which the court has been informed the property would have brought.

[■] It is not necessary to invoke the rule that matters not presented in the pleadings or involved in the issues in the trial court will not be considered in this court where they are for the first time presented. *Newman* v. *Light,* 152 Va. 760, 148 S. E. 818; *Stevens* v. *Mirakian,* 177 Va. 123, 12 S. E. (2d) 780. All of appellants' contentions are refuted and denied both by the law and the evidence.

■ In the first place, this suit was instituted and conducted in all respects in accordance with the statute and the usual practice of the courts in this State where a co-owner undertakes to have partition of real estate "notwithstanding any of those entitled may be an infant or insane person." Virginia Code, 1936, section 5281.

"Tenants in common, joint tenants, and co-parceners shall be compellable to make partition; * * *." Virginia Code, 1936, section 5279.

■ Such co-owners include infants as well as adults.

This is simply a suit whereby co-parceners have undertaken to obtain partition of land jointly owned by them with infants and other adults in the manner prescribed by law. There is no pretense that the bill bears any resemblance to a suit instituted by a guardian of the infant for the sale of his ward's land under Virginia Code, 1936, section 5335.

■ The evidence fully and satisfactorily showed that the farm could not be conveniently partitioned in kind among the parties entitled thereto; that no party was willing to accept the entire farm and pay therefor to the other parties such sum as their interest therein entitled them to; that the best interest of those who were entitled to the farm would be promoted by a sale of the entire subject; and that the sum of

$12,000, the only offer received by the court, was a fair and adequate price.

Howell made no offer to the court. He did not make himself a party to the cause. His so-called offer was in the record only as an exhibit with Woodrow F. Payne's answer. It is conceded that he did not make an upset bid for the real estate, and that he could not have been bound by any decree the court might have entered.

The sole question remaining is whether or not the sale of the farm to Houff, Tench and Weaver was a judicial sale. Clearly we think it was.

A judicial sale is one made by a court of competent jurisdiction, in a pending suit, through its authorized agent. It is the decree of confirmation by the court, and not the biddings or propositions to buy, that give a sale the character of a judicial sale. It is no less a judicial sale because made privately, and not at public auction. *Hess* v. *Rader*, 26 Gratt. (67 Va.) 746; *Terry* v. *Coles' Ex'r et als.*, 80 Va. 695; *Sproul* v. *Hunter*, 122 Va. 102, 94 S. E. 179; *Johnson* v. *Merritt*, 125 Va. 162, 99 S. E. 785.

In this case it was recognized by the parties that the infants were incapable of entering into a valid contract of sale. The acceptance of the appellees was expressly made subject to a confirmation by the court. The procedure adopted was proper and necessary to effectuate the purpose of the parties, to convey good title from the infants as well as from the contracting and non-contracting adult owners. The validity of the sale depended upon the court's approval and confirmation. When the purchasers filed their petition confirming their conditional offer to purchase the land, the offer of the purchasers became a contract between them and the court. *Newman* v. *Light, supra.*

It has long been the approved practice in Virginia in a suit involving the sale of infants' lands, whether by guardian or by way of a partition, that the court may approve and confirm a conditional sale made before a suit, as well as a sale directed, provided it is clearly shown that the interest of the infants will be promoted thereby. *Garland* v. *Loving*, 1

Rand. (22 Va.) 396; *Daniel* v. *Leitch*, 13 Gratt. (54 Va.) 195; *Goddin* v. *Vaughn's Ex'x*, 14 Gratt. (55 Va.) 102; *Smith* v. *White*, 107 Va. 616, 59 S. E. 480; *Robinson* v. *Shepherd*, 137 Va. 687, 120 S. E. 265.

The case of *McAllister* v. *Harman*, 101 Va. 17, 42 S. E. 920, may be readily distinguishable from all of the foregoing cases. In that case, the validity of the sale did not depend upon the court's confirmation. The land had been partitioned and the parties assigned their respective moieties, and the court had no jurisdiction under the pleadings to order the sale of one of the moieties assigned to one of the parties.

We affirm the decree of the trial court, and remand this cause for such further proceedings as may be necessary under that decree.

*Affirmed and remanded.*