## Richmond

DOROTHY E. UPTON, COMMITTEE FOR
DORIS JEAN RUSSELL, INCOMPETENT

v.

MICHAEL T. HALL, ET AL.

Record No. 801071.

JOHN WILLIAM RUSSELL, ET AL.

v.

MICHAEL T. HALL, ET AL.

Record No. 801146.

DOROTHY E. UPTON, COMMITTEE FOR
DORIS JEAN RUSSELL, INCOMPETENT

v.

MICHAEL T. HALL, ET AL.

Record No. 801607.

JOHN WILLIAM RUSSELL, ET AL.

v.

EDDIE RUSSELL, ET AL.

Record No. 801620.

March 11, 1983.

Present: Carrico, C.J., Cochran, Poff, Compton, Thompson,*
Stephenson, and Russell, JJ.

---

* Justice Thompson participated in the hearing and decision of this case prior to the effective date of his retirement on March 2, 1983.

*Elizabeth D. Whiting, Assistant County Attorney; Herbert S. Rosenblum (T.A. Emerson, County Attorney; David Rosenblum; Herbert S. Rosenblum; Rosenblum and Rosenblum, P.C.,* on briefs), for appellants.

*Richard R. Nageotte (Nageotte, Borinsky & Zelnick,* on brief), for appellees.

STEPHENSON, J., delivered the opinion of the Court.

This consolidated appeal arises out of two separate but related chancery suits. In one suit, the Committee of Doris Jean Russell attempted to set aside a conveyance made by Russell to Michael Hall and his wife. In the second suit, Russell's children objected to the court's decree confirming the sale of their interests in the same land to the Halls.

Three issues are raised on appeal. Russell's Committee argues the sale of Russell's interest in the land should be set aside because Russell was incompetent at the time the contract of sale was signed. The children argue the sale of their interests should be set aside because the sale as confirmed varied from the terms set forth in the original contract. Both the Committee and the children argue the price paid by the Halls was inadequate and that both sales should be set aside for this reason.

The land in question, containing approximately 104 acres, was owned equally by John and Eddie Russell. Upon John's death, his one-half interest descended to his wife, Doris Jean, and his four infant children.

In October, 1978, Eddie and Doris contracted to sell the land to Hall for $85,000. The contract contained the following terms of sale: ·

> $22,500 cash at settlement, balance in a Deed of Trust payable interest only the first year and then four years of equal semiannual payments of principal and interest. Interest at 8% per year. Sellers to look to the land only for payment of the said note. Purchaser may release land for payment of $900 per acre. Seller and Purchaser recognize that suit must be filed to approve sale of children's shares and Purchaser shall file suit and pay all expenses of such suit. Seller agrees to accept prepayment without penalty.

Pursuant to the contract, a suit was initiated naming Eddie and Doris as complainants and the four children and Hall as defendants. The complainants requested that the court either approve the sale of the infants' land according to the terms of the contract, Code § 8.01-67, *et seq.*, or decree that the land be partitioned, Code § 8.01-81, *et seq.* A guardian *ad litem* was appointed for the children, and the cause was referred to a Commissioner in Chancery.

The Commissioner treated the cause as a partition suit. He determined that the land was not susceptible to partition in kind and that $85,000 was a fair price. He concluded the sale of the property in accordance with the contract was in the best interest of all parties. In May, 1979, the court confirmed this report and appointed the guardian *ad litem* as Special Commissioner to convey the infants' interests in accordance with the contract.

Contrary to the court's decree, at settlement the Special Commissioner agreed to two modifications of the terms of sale. The deed of trust executed by the Halls excluded 25 acres of the original tract. Further, the Special Commissioner signed an agreement with the Halls allowing them to set off against future payments of the purchase price any roll-back taxes which might be assessed by the county.[1]

---

[1] Under Code § 58-769.4, *et seq.*, a county may assess and tax certain property as "real estate devoted to agricultural . . . [use]." When the use of the property changes, the assessment and consequential taxes may be raised not only for subsequent years, but for the five preceding years. Under Code § 58-769.10, the owner of the land at the time the change in use occurs is liable for the roll-back taxes.

In December, 1979, in a separate proceeding, the court determined that Doris was incompetent and appointed a Committee for her. The Committee filed suit to set aside Doris' conveyance to the Halls. The suit alleged that the Halls knew or should have known that Doris was incompetent at the time the contract was signed.

The trial court determined that Doris was incompetent at the time she entered into the original contract and at all times subsequent thereto. However, the court held that, while Doris was not named as an incompetent in the suit to confirm the sale of the children's interests, this suit in fact protected her property rights. The court therefore refused to set aside the sale and dismissed the Committee's suit.

In January, 1980, the Special Commissioner filed his report, and the Halls moved to have the sale confirmed. The Committee and the children, by their guardian and guardian *ad litem*, argued against confirmation, raising the issues of Doris' incompetency, the variances between the original contract and the final transaction, and the inadequacy of the purchase price. The court rejected these arguments and confirmed the sale.

Addressing the first issue, the Committee argues, and the Halls concede, that a contract made by a person who is mentally incompetent is voidable. *Edmunds* v. *Chandler*, 203 Va. 772, 778, 127 S.E.2d 73, 77 (1962). When the consideration is fair, the contract has been executed, and the other party acts in good faith without knowledge of the incompetency, the contract will be set aside only if the competent party can be placed *in statu quo*. *Id.* However, where the competent party has knowledge of the incompetency and overreaches the incompetent party, the contract will be set aside, and the competent party will not be entitled to reimbursement. *Id.*; *Jackson* v. *Counts*, 106 Va. 7, 12, 54 S.E. 870, 872 (1906).

It is undisputed that Doris was incompetent at the time she entered into the contract with Hall. Therefore, if, as the Committee alleges, Hall knew of this incompetency, Doris is entitled to have the contract set aside without placing the Halls *in statu quo*. If, on the other hand, Hall had no knowledge of Doris' incompetency, the transaction may be voided only if the Halls can be placed *in statu quo*. The trial court erred in not hearing evidence in order to decide these issues.

While it will be up to the trial court to balance the equities in determining whether the *status quo* can be restored, we

note that an exact reimbursement is not required. "Absolute and literal restoration is not required. Restoration that is reasonably possible and demanded by the equities of the case is enough." *Edmunds*, 203 Va. at 779, 127 S.E.2d at 78.

The record reveals that the Halls have built a house on a portion of the land and that a seven-acre tract has been conveyed to a third party.[2] A prudent title examiner would have discovered the variance between the deed of trust signed by the Halls and the decree of the trial court ordering the sale. Thus, any action taken by the Halls or by third parties before final confirmation of the sale by the trial court was done at their own risk with actual or constructive notice that the sale to the Halls might not receive final confirmation by the court.

The children argue that Doris' incompetency also requires that the sale of their interest in the land be voided. They contend that Doris should have been named as a defendant in the suit to confirm the contract and that a guardian *ad litem* should have been appointed for her. The children argue that in a suit to sell incompetent's land all statutory requirements must be complied with and, since they were not, the proceeding was void.

The fallacy in the children's argument is that the suit in question was not one to sell an incompetent's land. Doris and her brother-in-law brought suit asking the court to confirm the sale pursuant to Code § 8.01-67, *et seq.*, or, in the alternative, to partition the children's interests. The Commissioner in Chancery, without objection, elected to treat the matter as a partition suit, and the trial court confirmed the Commissioner's finding that the land was not subject to partition in kind. It is clear that an incompetent's land may be sold as part of a partition suit. Code § 8.01-83; *Payne* v. *Payne*, 179 Va. 562, 568, 19 S.E.2d 690, 692 (1942). Further, the fact that a guardian *ad litem* was not appointed for Doris in this proceeding is not a fatal defect. *Cottrell* v. *Mathews*, 120 Va. 847, 851, 92 S.E. 808, 809 (1917).

The children further argue that, if the sale of their interests was proper, the Special Commissioner erred in agreeing to vary the terms of the original contract, and the court abused its discretion in confirming the Commissioner's actions. We agree. The Special Commissioner was empowered to complete the trans-

---

[2] The trial court may determine on remand that the grantees under this conveyance are necessary parties to the suit.

action on behalf of the children only within the terms of the original contract. He was without authority to agree to any modifications.

■ The Halls argue that the Special Commissioner's actions were ratified by the court when it confirmed the sale. *Langyher* v. *Patterson & Bash*, 77 Va. 470 (1883). However, we are of opinion the trial court abused its discretion in confirming the actions of the Special Commissioner. Neither the exclusion of the 25 acres from the deed of trust nor the agreement respecting roll-back taxes was in the best interests of the children. Indeed, both were clearly contrary to their interests. The exclusion of the 25 acres seriously impaired the infants' security. This was especially significant, since the agreement provided the sellers could not look beyond the land for any deficiency in the event of default. The provision making the sellers liable for roll-back taxes in effect reduced the purchase price of the land.

■ In a third assignment of error, both the Committee and the children argue the $85,000 purchase price for the land was inadequate and that the sale should be set aside for this reason. In support of this motion, the parties tendered to the trial court an affidavit from the Supervisor of Assessments for Prince William County stating that the land was valued for tax purposes at $146,528 in 1979. Other evidence revealed that the property had been listed with a real estate agent at $100,000 for a substantial period of time and that the Russells had been unable to sell it at that price.

Taking the evidence as a whole, we are unable to say the purchase price paid by the Halls was so grossly inadequate as to shock the conscience. *Schweitzer* v. *Stroh*, 182 Va. 842, 848, 30 S.E.2d 689, 692 (1944); *Dunn* v. *Silk*, 155 Va. 504, 517, 155 S.E. 694, 698 (1930). We therefore affirm the ruling of the trial court in refusing to set aside the sale on this ground.

In summary, we will reverse the decree of the trial court as it pertains to Mrs. Russell and remand the cause in order that the court may determine whether the Committee should be able to avoid the transaction, in accordance with the views more fully expressed herein. With regard to the children, the cause will be remanded with instructions that the trial court set aside the deed of trust and agreement respecting roll-back taxes and order the parties to sign new documents complying with the original terms of the October, 1978 contract. The deed of trust is to be a first lien

on the land. In all other respects, the sale of the infants' interests in the land will be affirmed.

*Reversed and remanded.*